**No. 24-5918, 24-5919, 25-5424**

_____

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

_____

GLEN WHITING, PLAINTIFF-APPELLANT; VAN IRION, APPELLANT

V.

CITY OF ATHENS, TENNESSEE; SETH SUMNER; BO PERKINSON;
BRANDON ASHWORTH; JAMESON SLIGER; TY GABLE; ROD WALKER;
SETH WALKER; DEB CARDIN; TYLER HICKS; OFFICER TOM GARLAND,
DEFENDANTS-APPELLEES

_____

On Appeal from the United States District Court for the Eastern District of
Tennessee at Knoxville, No. 25-5424 – Travis Randall McDonough, District Judge

_____

**PETITION FOR REHEARING AND REHEARING EN BANC**

_____

Russell Egli, BPR 24408
The Egli Law Firm
11109 Lake Ridge Drive, FL3
Knoxville, TN 37934
865-304-4125
theeglilawfirm@gmail.com
*Counsel for Appellant Whiting*

# TABLE OF CONTENTS

Table of Authorities……………………………………………………..3

Introduction…………………………………………………………...4

Rule 35(b)(1) Statement…………………………………………………5

Statement of Issues Presented for Review…………………………………5

Statement of the Case……………………………………………………6

Standard for Re-hearing En Banc…………………………………………8

Argument

    I.     En banc review is warranted because the punitive monetary sanction raises exceptionally important due process concerns………………8

    II.    En banc review is warranted to clarify the limits of inherent authority when an express appellate sanctions mechanism exists……………9

    III.   En banc review is warranted because the panel's reliance on a Clerk issued show-cause process, rather than established disciplinary procedures, presents an exceptionally important question………...9

    IV.   The Panel's Failure to Examine the Distinct Roles and Briefs Between Counsel Contravenes Principles of Individual Accountability…….10

    V.    The Panel's Treatment of Egli's Response to the Show Cause Order Violated the Notice Requirement of Due Process………………….11

    VI.   The Panel's Imposition of Sanctions is Inconsistent with Supreme Court Precedent Requiring a Culpable State of Mind……………………12

Conclusion………………………………………………………………13

Certificate of Compliance………………………………………………..14

Certificate of Service……………………………………………………..15

Appendix – Show Cause and Panel Opinion

## TABLE OF AUTHORITIES

Cases

*Big Yank*, 125 F.3d at 313 …………………………………………………..13

*Smith v. Detroit Fed'n of Teachers. Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987) …………………………………………………………………………..13

Rules and Statutes

FRAP 38………………………………………………………………… 6, 12-14

FRAP 35(b)(1)………………………………………………………….5

6 Cir. R. 45(a)………………………………………………………….9, 12

6 Cir. R. 46(c)………………………………………………………….12

28 U.S.C. § 1927………………………………………………………….11

# INTRODUCTION

This petition seeks rehearing en banc of the panel's published sanctions opinion and order imposing sanctions on counsel Russell Egli in connection with Appeal No. 25-5424, including sanctions under Federal Rule of Appellate Procedure 38 and the Court's inherent authority, and including a punitive monetary sanction payable to the Court (paid into the Court's registry).

En banc review is warranted because the decision presents exceptionally important questions about the procedural safeguards required before a Sixth Circuit panel may impose punitive monetary sanctions on counsel, and about the limits of inherent-authority sanctions when an express appellate sanctions mechanism exists.

The panel's approach also raises exceptionally important concerns about individual accountability-sanctioning a specific lawyer for a specific filing-where the opinion allegedly conflates multiple attorneys and multiple appeals without identifying which challenged statements were in Mr. Egli's brief in Appeal No. 25-5424.

Finally, the panel's sanctions rested in part on a show-cause, signed by the clerk of the court, that demanded disclosures about brief drafting, ghostwriting, and generative artificial intelligence use, and Mr. Egli contends his good-faith procedural objections were not adjudicated before sanctions were imposed.

# RULE 35(b)(1) STATEMENT

This case presents questions of exceptional importance concerning what notice and opportunity to be heard are required before a Sixth Circuit panel may impose punitive monetary sanctions payable to the Court (as opposed to compensatory fee-shifting payable to an opposing party), and what specificity of findings is required to support punishment of counsel.

The panel imposed sanctions under Federal Rule of Appellate Procedure 38 (frivolous appeal) and also under inherent authority, including a punitive payment to the Court, raising an exceptionally important institutional question about the proper channeling and limits of inherent authority when an express appellate sanctions mechanism exists.

The panel's reliance on a Clerk-issued show-cause process demanding disclosures about who drafted briefs, ghostwriting, and generative artificial intelligence use-and the panel's treatment of counsel's procedural objections-presents exceptionally important questions about the proper procedures for addressing attorney-conduct concerns at the appellate level.

## I. Statement of Issues Presented for Re-hearing En Banc.

1. Whether the panel erred in opposing sanctions against attorney Russell Egli under Federal Rule of Appellate Procedure 38 and the court's

inherent authority to in connection with his representation in Appeal No. 25-5424.

2. Whether the panel's interpretation of a frivolous as argued appeal under FRAP 38, which does not require a finding of intent or bad faith, conflicts with controlling precedent of the Supreme Court and this Circuit.

3. Whether the panel's rejection of Mr. Egli's good-faith procedural objections to the show cause order, and subsequent imposition of sanctions without addressing the merits of his potential defenses, deprived him of notice and opportunity to be heard required by due process.

**II.     Statement of the Case and Relevant Procedural History.**

1. These consolidated appeals arise from district-court proceedings involving sanctions entered against Glenn Whiting and counsel, and Mr. Egli's involvement was limited to representation on appeal from the district court's sanctions award.

2. Mr. Egli was not involved in the underlying Athens, Tennessee matters that gave rise to the district-court litigation and was not counsel of record in those underlying cases with exception of defending the imposition of sanctions by the district court regarding Whiting.

3. Mr. Egli has not harassed the City of Athens, Tennessee for five years; rather, his participation was confined to appellate representation challenging the district court's sanctions determinations.

4. The panel issued an order to show cause that demanded, among other things, disclosures about who drafted the briefs, whether any portion was ghostwritten, whether generative artificial intelligence was used, and what cite-checking processes were employed.

5. The challenged material was not intentional nor made in bad faith by Mr. Egli. Mr. Egli does acknowledge that he should have reviewed the brief prior to it being filed. Had Mr. Egli been provided a meaningful response to the objections he raised in his response to the order to show cause he would have substantively raised these material defenses, such as, but not limited to whether the use of legal AI rises to bad faith without a legal AI safeguards in place, however, that requirement of due process was cut-off by the court moving directly to sanctions.

6. Mr. Egli contends he was denied a meaningful opportunity to explain these circumstances to the Court because the Clerk did not follow the proper procedural steps associated with the Sixth Circuit's attorney-disciplinary process before the panel relied on noncompliance and related inferences as a basis for punitive sanctions.

7. The panel imposed sanctions under its appellate sanctions authority and inherent authority, including fee-shifting and costs, and also imposed a punitive monetary sanction against Mr. Egli payable to the Court.

8. Mr. Egli represents that the $15,000 sanction Ordered by the panel to be paid into the Registry of this Court was complied with, as the Court has acknowledged, to avoid any risk of enforcement of contempt proceedings.

**III.    Standard for Re-hearing En Banc.**

En banc rehearing is appropriate when the proceeding involves a question of exceptional importance or when en banc consideration is necessary to secure or maintain uniformity of the Court's decisions.

**Argument**

**I.    En banc review is warranted because the punitive monetary sanction raises exceptionally important due process concerns.**

The imposition of a punitive monetary sanction payable to the Court, rather than a compensatory award payable to an opposing party, triggers heightened concerns about notice, an opportunity to be heard, and the specificity of findings required to support punishment.

Here, Mr. Egli maintains that he was not afforded a fair opportunity to present a complete explanation of how the brief came to include the challenged material, as well as whether the use of legal AI rises to bad faith with no procedural safeguards in place to determine the same.

En banc review is warranted to ensure uniform Circuit-wide safeguards when punitive sanctions are imposed at the appellate level and to clarify what process is required before the Court may punish counsel based on alleged briefing misconduct and alleged noncompliance with an order to show cause, which in good faith relied on 6 Cir. R. 45(a).

**II.     En banc review is warranted to clarify the limits of inherent authority regarding attorney discipline before this Court.**

When an express appellate attorney discipline mechanism is available, the Court's inherent authority should not be used to expand sanctions beyond what is necessary to address the misconduct without clear findings and procedural protections commensurate with the punitive nature of the sanction. 6 Cir. R. 46(c).

The panel's use of both an express appellate sanctions mechanism and inherent authority to impose an additional punitive payment to the Court presents an exceptionally important institutional question for the Sixth Circuit bar and warrants en banc clarification.

**III.    En banc review is warranted because the panel's reliance on a Clerk-issued show-cause process, rather than established disciplinary procedures, presents an exceptionally important question.**

Attorney discipline and punitive sanctions implicate structured procedural protections, and the Court's processes should ensure that counsel receives clear

notice of the alleged misconduct, the potential sanctions, and the procedural path by which discipline will be considered.

Mr. Egli respectfully submits that the Clerk's handling of the show-cause process did not follow the proper procedural steps associated with the Sixth Circuit's disciplinary framework, and that this irregularity materially impaired his ability to present a defense.

En banc review is warranted to provide authoritative guidance on how the Court should proceed when concerns about counsel conduct overlap with disciplinary matters and when compelled disclosures about drafting practices and technology use are demanded.

### IV. En banc review is warranted to ensure uniform standards for findings of bad faith (or conduct tantamount to bad faith).

Inherent-authority sanctions generally require a finding of bad faith or conduct tantamount to bad faith, supported by specific findings tied to the record.

Mr. Egli's limited role—appearing only for the appeal of the district court's sanctions award, as well as Whiting's sanctions at the district court level.

En banc review is warranted to ensure that punitive sanctions are not imposed absent the requisite findings and that the Court applies consistent standards when attributing intent to counsel based on drafting errors, citation problems, or internal law-office processes.

Mr. Egli's payment of the $15,000 sanction into the Court's registry was in compliance with the panel's directive that the punitive sanction be paid to the registry of this court.

All moneys paid into a court of the United States, or received by its officers, must be deposited with the Treasurer of the United States or a designated depositary in the name and to the credit of such court. Accordingly, if rehearing en banc is granted and the punitive registry sanction against Mr. Egli is vacated or reduced, Mr. Egli respectfully requests that the en banc Court include in its disposition an order directing appropriate disbursement/return of the funds from the registry.

### V.     The Panel's Failure to Examine the Distinct Roles and Briefs Between Counsel Contravenes Principles of Individual Accountability.

The sanctions opinion repeatedly refers to the misconduct of Whiting's lawyers, Van Irion and Russ Egli and finds fault in Whiting's briefs collectively. However, Mr. Egli was counsel of record only in Appeal No. 25-5424.

Sanctions, particularly those as a severe as imposed here, demand individual accountability. Statutes, such as 28 U.S.C. § 1927 require a court to assign responsibility to specific counsel who multiplies the proceedings … unreasonably and vexatiously. Therefore, the panel's opinion improperly conflates the work of two different lawyers across three separate appeals, levying collective punishment

without the particularized findings of misconduct necessary to support sanctions against Mr. Egli individually. This approach violates fundamental principles of fairness and due process.

**VI.    The Panel's Treatment of Egli's Response to the Show Cause Order Violated the Notice Requirement of Due Process.**

An attorney facing sanctions is entitled to notice and a meaningful opportunity to be heard. The panel's order to show cause demanded explanations but also intruded into areas of protected by attorney-client and work-product privileges by asking who wrote the briefs and whether they were ghost written. Furthermore, the order to show cause was issued under the signature of the Clerk of the Court, not a judge, raising a legitimate good-faith question as to it's authority. 6 Cir. R. 45(a). Mr. Egli's response raised these valid procedural concerns. Indeed, the show cause order was not mailed to counsel it was filed electronically. 6 Cir. R. 46(c). Yet, instead of ruling on the objections the court went straight to ordering sanctions. Had the objections been ruled upon and overruled it would have provided an opportunity for Mr. Egli to respond to the substance of the allegations. However, the panel deemed the response not serious and proceeded directly to imposing sanctions.

**VII.   The Panel's Imposition of Sanctions is Inconsistent with Supreme Court Precedent Requiring a Culpable State of Mind.**

The panel imposed sanctions under both FRAP 38 and its inherent authority.

While the court's inherent power is undeniable, the bad faith exception Court has sets forth for a finding of bad faith: (1) that the claims advanced were meritless, (2) that counsel knew of should have none this, and (3) that the motive for filing suit was for an improper purpose such as harassment. *Big Yank*, 125 F.3d at 313 quoting *Smith v. Detroit Fed'n of Teachers. Local 231*, 829 F.2d 1370, 1375 (6th Cir. 1987). The panel's opinion contravenes this high standard. In its analysis under FRAP 38, the panel explicitly stated that frivolousness need not be intentional; even inadvertently frivolous appeals are subject to Rule 38 sanctions. Whie this may be true for an award of costs, the panel used this finding of non-intentional, frivolous-as-argued conduct as a springboard to impose more severe sanctions under its inherent authority, for which it found bad faith. The panel's finding of bad faith appears to rest on little more than the presence of errors themselves and Mr. Egli's procedural objections to the show cause order. This effectively lowers the bar for inherent authority sanctions from bad faith to mere negligence. This issue is of exceptional importance to every attorney practicing before this court mandating en banc review.

## CONCLUSION

Because the provided Sixth Circuit authority requires bad faith for inherent-authority sanctions, and because Egli challenges both the sufficiency of individualized findings and the accuracy of the panel's key factual premise, the

most defensible relief request on this record is to grant rehearing en banc and vacate the sanctions order as to Egli.

If the en banc Court concludes the record is insufficiently particularized as to which statements in which filing support sanctions against Egli, it should at minimum vacate and remand for particularized findings applying the correct standards (Rule 38's frivolousness standard and inherent authority's bad-faith requirement) to Egli's conduct in Appeal No. 25-5424.

Egli represents he paid the $15,000 punitive sanction into the Court's registry and requests that, if the sanction is vacated or reduced, the Court's disposition include an order directing appropriate disbursement/return of those funds.

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure Sixth Circuit Rules, I certify that this [Petition for Rehearing and Rehearing En Banc/Brief/Motion] complies with the type-volume limitation of Federal Rule of Appellate Procedure because it contains 2170 words, in Times New Roman 14 font excluding the parts of the document exempted by Federal Rule of Appellate Procedures.

Respectfully submitted,

s/Russell Egli
Russell Egli, BPR#24408
The Egli Law Firm
11109 Lake Ridge Drive, FL3
Knoxville, TN 37934
865-304-4125
865-274-8872
theeglilawfirm@gmail.com

*Petitioner/Appellant*

## CERTIFICATE OF ELECRONIC SERVICE

I certify that I served a true and correct copy of the foregoing Petition for

Rehearing and for Rehearing En Banc on all counsel of record and/or parties

entitled to service through the Court's CM/ECF system. Service was accomplished

by filing the document electronically, which generated a Notice of Electronic

Filing to all registered CM/ECF users.

s/Russell Egli
Russell Egli, BPR#24408
The Egli Law Firm
11109 Lake Ridge Drive, FL3
Knoxville, TN 37934

*Petitioner/Appellant*

FILED

Sep 18, 2025

KELLY L. STEPHENS, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**24-5918/5919**

GLENN WHITING,

     Plaintiff - Appellant,

     v.

CITY OF ATHENS, TENNESSEE (24-5918/5919); MIKE KEITH and BRANDON AINSWORTH (24-5918); STEVE SHERLIN (24-5919),

     Defendants - Appellees.

**25-5424**

GLENN WHITING,

     Plaintiff - Appellant,

VAN IRION,

     Appellant,

v.

CITY OF ATHENS, TENNESSEE; SETH SUMNER; BO PERKINSON; BRANDON AINSWORTH; JAMESON SLIGER; TY GABLE; ROD WALKER; SETH WALKER; DEB CARDIN; TYLER HICKS; OFFICER TOM GARLAND,

     Defendants - Appellees.

On Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.

# SHOW CAUSE ORDER

**THESE MATTERS** are before the court *sua sponte*. All three cases are appeals that arise

out of lawsuits filed by Plaintiff-Appellant Glenn Whiting against the City of Athens, Tennessee,

and several city officials over a 2022 fireworks show and the subsequent fallout.

Nos. 24-5918/5919/25-5424, *Whiting v. City of Athens, Tenn. et al.*

We have concerns about some of the representations in Whiting's briefing.  For example, on page 21 of his brief in No. 25-5424, Whiting asserts that the district court issued sanctions *sua sponte* under 28 U.S.C. § 1927, but the district court issued those sanctions on motion of the defendants.

We also have concerns related to several of the authorities cited in Whiting's briefing.  A sample of problematic citations follows.

On page 1 of his brief in No. 25-5424, Whiting cites "*Jones v. Hamilton Cnty.*, 29 F.4th 647, 655 (6th Cir. 2022)," for the proposition that we review sanctions under "42 U.S.C. § 1927" for an abuse of discretion.  Whiting Brief in No. 25-5424 at 1.  Whiting also cites "*Jones v. Hamilton Cnty.*" on pages 13 and 20 of the brief.  *Id.* at 13, 20.  The Federal Reporter citation does not correspond with a Sixth Circuit decision.  The decision at 29 F.4th 647 is a Tenth Circuit opinion in an unfair competition case.  *See Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 647 (10th Cir. 2022).  And the decision at 29 F.4th 655 is another Tenth Circuit case—this time an appeal from a guilty plea.  *See United States v. McIntosh*, 29 F.4th 648, 655 (10th Cir. 2022).  Neither Tenth Circuit case discusses attorneys' fees or sanctions.  This court has issued a decision captioned "*Jones v. Hamilton County*," but it was an unpublished opinion from 2023.  *See Jones v. Hamilton County*, No. 23-3002, 2023 WL 7391704 (6th Cir. Nov. 8, 2023), *cert. denied*, 144 S. Ct. 1098 (2024).  That case does, however, stand for the proposition that we review sanctions under 28 U.S.C. § 1927 for an abuse of discretion.  *See id.* at *3.

Also on page 1 of his brief in No. 25-5424, Whiting cites "28 U.S.C. § 455(f)" as providing the appropriate provision to pursue a recusal motion.  Whiting Brief in No. 25-5424 at 1. But § 455(f) creates an exception to the rule that judges must recuse from a case in which they have a financial interest.  It says nothing about recusal motions generally.

Nos. 24-5918/5919/25-5424, *Whiting v. City of Athens, Tenn. et al.*

On pages 3, 14, 22, and 23 of his brief in No. 25-5424, Whiting cites "*Espinosa*, 559 U.S. 260 (2010)" and "*Espinosa v. United Student Aid Funds, Inc.*, 559 U.S. 260, 272 (2010)," for the proposition that the district court violated Whiting's due process rights by failing to give him enough time to prepare his pleadings and by denying him access to the CM/ECF electronic filing system. Whiting Brief in No. 25-5424 at 3, 14, 22–23. But the case is actually captioned "*United Student Aid Funds, Inc. v. Espinosa*." Moreover, that case was about whether the bankruptcy court should have granted Rule 60(b) relief because the debtor did not serve a creditor with a summons and complaint in an adversary proceeding. *United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010).

On pages 12 and 16 of his brief in No. 25-5424, Whiting cites "*Price Bros. v. Philadelphia Gear*, 629 F.2d 444, 449 (6th Cir. 1980)," to argue that the district court violated the "extrajudicial-source doctrine." Whiting Brief in No. 25-5424 at 12. Although that case does involve a judge who sent his law clerk to engage in extra-record fact-finding, the pincite that Whiting cites is to a Seventh Circuit case about medical malpractice. *See Williams v. St. Joseph Hosp.*, 629 F.2d 448, 449 (7th Cir. 1980).

On page 16 of his brief in No. 25-5424, Whiting cites "*Berg v. Knox Cnty., TN*, 2024 WL 2012345, at *4 (6th Cir. Mar. 12, 2024)," for the proposition that "recusal mandated when extrajudicial commentary demonstrates bias." Whiting Brief in No. 25-5424 at 16. We cannot find any evidence that this case exists. The WL citation does not generate a case. We could not find the opinion in our opinions archive. Indeed, the only source on Westlaw that cites to a Sixth Circuit decision called "*Berg v. Knox Cnty.*" is Whiting's briefing in this case. We found three district court opinions captioned as "*Berg v. Knox County, Tennessee*" in Westlaw, but none of them discuss recusals of a judge. *See generally Berg v. Knox County*, No. 3:20-CV-00019-DCLC,

Nos. 24-5918/5919/25-5424, *Whiting v. City of Athens, Tenn. et al.*

2020 WL 7078374 (E.D. Tenn. Sept. 28, 2020); *Berg v. Knox County*, No. 3:22-CV-272-KAC-JEM, 2023 WL 122904 (E.D. Tenn. Jan. 6, 2023); *Berg v. Knox County*, No. 3:20-CV-19-DCLC-HBG, 2020 WL 13888749 (E.D. Tenn. Dec. 17, 2020).

On pages 17 and 19 of his brief in No. 25-5424, Whiting cites "T.C.A. § 29-12-119," but we cannot find a section 29-12-119 in the Tennessee Code Annotated.

Finally, on pages 17 and 20 of his brief in No. 25-5424, Whiting cites to *Fox v. Vice*, 563 U.S. 826 (2011), for the propositions that (1) "fee awards 'must be limited to the hours reasonably expended on' the frivolous claim," (2) "[t]he Court 'may make . . . a percentage reduction'" of a lawyer's requested fees, and (3) "[u]nsupported 'attorney conjecture' on apportionment" of attorneys' fees "is impermissible." Whiting Brief in No. 25-5424 at 17, 20 (omission original). But none of those quotes appear in *Fox*.

On pages 1 and 4 of Whiting's reply in No. 24-5918, Whiting says, "'[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." That quote does not appear in *Adcock-Ladd*. Furthermore, throughout the reply, Whiting includes quoted language without citing a source. For example, on pages 1, 4, 6, and 7, Whiting apparently cites to Appellees' brief but does not provide a record cite. And on pages 6 and 8, Whiting appears to quote language from court cases but includes no case citation.

We therefore have cause to believe that sanctions may be warranted under the Federal Rules of Appellate Procedure, this court's inherent authority, and any other source of disciplinary or sanctioning power. *See, e.g.*, Fed. R. App. P. 38; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991).

**NOW THEREFORE**,

Nos. 24-5918/5919/25-5424, *Whiting v. City of Athens, Tenn. et al.*

1. Van Irion and Russell Egli are **ORDERED TO SHOW CAUSE** why they should not be sanctioned and/or disciplined for the conduct described in this order.

2. Briefs of no more than 5,000 words are due within two weeks after the issuance of this order.

3. Any other party wishing to submit a brief may submit a brief of no more than 5,000 words within two weeks after Irion and Egli submit their responsive briefs.

4. There will be no reply briefs.

5. Irion and Egli must provide the Westlaw or LexisNexis printouts of each authority cited across all of the briefs they have filed in the consolidated appeals. If Irion and Egli have quoted from an authority, they must highlight the quoted language in each authority. If there are any discrepancies, Irion and Egli are expected to discuss those discrepancies in their responsive briefing.

6. In addition to any arguments or factual submissions that they believe warrant our consideration, Irion and Egli must explain (1) who wrote the briefing in each case, (2) whether any of the briefs were ghost written in whole or in part, (3) whether generative AI was used in the drafting of these briefs, and (4) the processes that were used to cite-check each brief.

**ENTERED BY ORDER OF THE COURT**

Kelly L. Stephens, Clerk

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

<table>
<tr><td>Kelly L. Stephens<br>Clerk</td><td>100 EAST FIFTH STREET, ROOM 540<br>POTTER STEWART U.S. COURTHOUSE<br>CINCINNATI, OHIO 45202-3988</td><td>Tel. (513) 564-7000<br>www.ca6.uscourts.gov</td></tr>
</table>

Filed: March 13, 2026

Mr. Brian Robert Bibb
Watson Roach Batson & Lauderback
900 S. Gay Street
Knoxville, TN 37902

Mr. Russell Lee Egli
Egli Law
11109 Lake Ridge Drive, Third Floor
Knoxville, TN 37934

Mr. Van R. Irion
800 S. Gay Street, Suite 700
Knoxville, TN 37929

Mr. Daniel Roberts Pilkington
Watson Roach Batson & Lauderback
900 S. Gay Street
Knoxville, TN 37902

Mr. Philip Aaron Wells
Spears, Moore, Rebman & Williams
601 Market Street, Suite 400
Chattanooga, TN 37402

  Re: Case Nos. 24-5918/24-5919/25-5424, *Glenn Whiting v. City of Athens, TN, et al*
     Originating Case No. 3:23-cv-00220

Dear Counsel,

  The attached opinion designated for full-text publication was filed today in these cases.

           Yours very truly,

           Kelly L. Stephens, Clerk

           Cathryn Lovely, Opinions Deputy

cc: Ms. LeAnna Wilson


Enclosure

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 26a0080p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

GLENN WHITING,

*Plaintiff-Appellant*,

*v.*

CITY OF ATHENS, TENNESSEE (24-5918/5919); MIKE
KEITH AND BRANDON AINSWORTH (24-5918); STEVE
SHERLIN (24-5919)

*Defendants-Appellees*.

No. 24-5918/5919

GLENN WHITING,

*Plaintiff-Appellant*,

VAN IRION,

*Appellant*,

*v.*

CITY OF ATHENS, TENNESSEE; SETH SUMNER; BO
PERKINSON; BRANDON AINSWORTH; JAMESON SLIGER;
TY GABLE; ROD WALKER; SETH WALKER; DEB
CARDIN; TYLER HICKS; OFFICER TOM GARLAND,

*Defendants-Appellees*.

No. 25-5424

———————————

United States District Court for the Eastern District of Tennessee at Knoxville.
Nos. 23-cv-0002; 23-cv-00220-221—Travis Randall McDonough, District Judge.

Decided and Filed:  March 13, 2026

Before:  STRANCH, BUSH, and MURPHY, Circuit Judges.

———————————

## SANCTIONED COUNSEL

Van R. Irion, LAW OFFICE OFF VAN R. IRION, Knoxville, Tennessee.  Russ Egli, THE EGLI
LAW FIRM, Knoxville, Tennessee.

No. 24-5918/5919/25-5424      *Whiting v. City of Athens, Tenn.*                    Page 2

———————————

**OPINION**

———————————

JOHN K. BUSH, Circuit Judge.   These consolidated appeals concern several lawsuits filed over an incident at the annual fireworks show hosted by the City of Athens, Tennessee, in 2022, and the subsequent fallout.   By separate opinion issued this date, we affirm the district court in all respects.

This opinion addresses the misconduct of Glenn Whiting's lawyers, Van Irion and Russ Egli, in their briefing before this court and the sanctions we impose for it.   That briefing repeatedly misrepresented the record, cited non-existent cases, and cited cases for propositions of law that they did not even discuss, much less support.   As explained below, Irion's and Egli's misconduct warrants the sanctions laid out in Section II.C.

**I.**

As noted, these consolidated appeals arise out of lawsuits that Irion filed on behalf of Whiting over a 2022 fireworks show and its aftermath.   Egli represents Irion and Whiting in one of the appeals.   Irion represents Whiting in the other two.

After we docketed the appeals and conducted our initial review of the briefs, we consolidated the cases.   At that point, we noticed some problems.   Whiting's brief misrepresented the nature of the district court's sanctions order in No. 25-5424.   Also, many of the cases cited in Whiting's briefs either did not exist, did not include the quoted language he claimed they did, or did not discuss or support the proposition for which Whiting cited them.   All told, we found over two dozen fake citations and misrepresentations of fact in Whiting's briefs,[1] which we list in an appendix to this opinion.

---

[1]This is a conservative estimate.   We call something a "fake citation" or "misrepresentation of fact" only when it is clearly so.   We do not include typos or sloppy citations.   "As those mistakes could be attributed to simple sloppiness in drafting, as opposed to a failure to comply with the basic obligations of legal counsel, they are not the subject of this" opinion.   *Davis v. Marion Cnty. Super. Ct. Juv. Detention Ctr.*, No. 1:24-CV-01918-JRS-MJD, 2025 WL 2502308, at *1 n.1 (S.D. Ind. Sept. 2, 2025).   If we included typos and other errors that are arguably, but not clearly, a misrepresentation or fake citation, we would be looking at far more misstatements of fact and law.

Upon discovering these problems, we ordered Irion and Egli to show cause why they should not be sanctioned.  The order instructed them to (1) explain why they should not be sanctioned for citing fake cases, (2) provide a copy from Westlaw or LexisNexis of all the cases and authorities cited in all of the briefs filed across the three appeals, (3) highlight any material that they quoted from those cases, (4) tell us who wrote the briefs in each case, (5) tell us whether the briefs were ghostwritten in whole or in part, (6) tell us whether they used generative AI to write the briefs, and (7) explain how they cite-checked the briefs.  Order to Show Cause at 5.  Irion and Egli did not respond to these directives.  Instead, they said the show cause order was "void on its face for failing to include a signature of an Article III judge," was "motivated by harassment of the Respondent attorneys," and "reflect[ed] illegal ex-parte [*sic*] communications within this Court."  Egli Show Cause Response at 1, 4 (No. 25-5454); Irion Show Cause Response at 1, 4 (Nos. 24-5918/5919).

## II.

### A.

We ultimately decide to sanction Irion and Egli under Federal Rule of Appellate Procedure 38 and our inherent authority.  We discuss each in turn.

### 1.

We can "award just damages and single or double costs to the appellee" when we "determine[] that an appeal is frivolous."  Fed. R. App. P. 38.  "Frivolousness need not be intentional; even inadvertently frivolous appeals are subject to Rule 38 sanctions." *Nix v. Major League Baseball*, 62 F.4th 920, 937 (5th Cir. 2023).  Rule 38 focuses on the whole appeal, not just a specific argument.  *See Waldman v. Stone*, 854 F.3d 853, 855 (6th Cir. 2017) (order).  So even when there might be a handful of colorable arguments, we can sanction the appellant if most of the appellant's briefing was "devoted to frivolous argumentation."  *Id.* (quoting *Hill v. Norfolk & W. Ry. Co.*, 814 F.2d 1192, 1200 (7th Cir. 1987)); *see also Hill*, 814 F.2d at 1200–01.

An appeal can be frivolous as filed, frivolous as argued, or both.  *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 948 F.2d 1573, 1578–79 (Fed. Cir. 1991).

An appeal is frivolous as filed when "the judgment by the lower court was so plainly correct and the legal authority contrary to the appellant's position so clear that there really is no appealable issue." 21 *Moore's Federal Practice—Civil* § 338.20[1] (Sept. 2025).  Most of these appeals are "obviously without merit *and . . .* prosecuted for delay, harassment, or other improper purposes." *Larry E. Parrish P.C. v. Bennett*, 989 F.3d 452, 457 (6th Cir. 2021) (quoting *Barney v. Holzer Clinic, Ltd.*, 110 F.3d 1207, 1212 (6th Cir. 1997)).  But an appeal is also frivolous as filed when the appellant lacks a "reasonable expectation of altering the district court's judgment based on law or fact."  *B & H Med., L.L.C. v. ABP Admin., Inc.*, 526 F.3d 257, 270 (6th Cir. 2008) (quoting *Wilton Corp. v. Ashland Castings Corp.*, 188 F.3d 670, 677 (6th Cir. 1999)).

An appeal is frivolous as argued when the appellant engages in "misconduct in arguing the appeal," like "distorting the record," "disregarding or mischaracterizing the clear authority against the appellant's position," or "attempting to draw illogical deductions from the facts and the law."  21 *Moore's Federal Practice—Civil* § 338.20[1]; *Walker v. Health Int'l Corp.*, 845 F.3d 1148, 1154 (Fed. Cir. 2017).  Substantially misrepresenting the law can also make an appeal frivolous as argued.  *Walker*, 845 F.3d at 1154.  So an appellant can be sanctioned even when the appeal might facially have some merit if, as here, the appellant misrepresents the record, invents fake case law, or engages in some other form of misconduct.  *Finch v. Hughes Aircraft Co.*, 926 F.2d 1574, 1579–80 (Fed. Cir. 1991); *Mitchell v. Bank of New York Mellon*, 835 F. App'x 318, 328–29 (10th Cir. 2020).

In short, the difference between the two is the type of conduct being punished.  In frivolous-as-filed cases, "the mere filing of the appeal is in itself frivolous."  *Romala Corp. v. United States*, 927 F.2d 1219, 1222 (Fed. Cir. 1991).  An example would be when the appeal is plainly barred by a waiver—although the substantive arguments asserted on appeal might have some merit, the act of filing the appeal is itself frivolous because it is barred.  *See Bridgeport Music, Inc. v. Smith*, 714 F.3d 932, 944 (6th Cir. 2013).  In frivolous-as-argued cases, the arguments made on appeal are frivolous.  *Finch*, 926 F.2d at 1579.  An example would be when the appellant says that the district court erred in granting a Rule 12(b)(6) motion when the district court granted summary judgment—the mere fact that a complaint states a claim is never enough

to avoid summary judgment. *Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 926–28 (8th Cir. 2015).

We reject any suggestion that Rule 38 does not recognize frivolous-as-argued appeals. True, one reading could suggest that it speaks only to frivolous-as-filed appeals because it discusses the appeal itself as opposed to the arguments made. *See* Fed. R. App. P. 38 ("If a court of appeals determines that an appeal is frivolous . . . ."). But "[f]rivolousness is determined . . . not in the abstract but in relation to the arguments actually made by the appellant." *Anderson v. Steers, Sullivan, McNamar & Rogers*, 998 F.2d 495, 496 (7th Cir. 1993). So the question is whether the appellant has made frivolous arguments in support of reversal. A frivolous-as-filed appeal violates Rule 38 because no arguments could ever support reversal. A frivolous-as-argued appeal violates Rule 38 because the arguments made were frivolous, even if arguments that the appellant chose not to advance could have supported reversal. In that sense, the frivolous-as-argued and frivolous-as-filed appeal are just two sides of the same coin. The only difference is whether the appellant could have made an argument that would justify reversal. *See Finch*, 926 F.2d at 1580 n.4 ("In most appellate decisions, both types of frivolity actually seem to have been present.").

The party presentation principle supports this conclusion. "Courts are essentially passive instruments of government" that "wait for cases to come to them" and "rely on the parties to frame the issues for decision." *United States v. Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (first part quoting *United States v. Samuels*, 808 F.2d 1298, 1301 (8th Cir. 1987) (Arnold, J., concurring in the denial of reh'g en banc); second part quoting *Greenlaw v. United States*, 554 U.S. 237, 243 (2008)) (cleaned up). And "judges are not like pigs, hunting for truffles buried in the record." *Murthy v. Missouri*, 603 U.S. 43, 67 n.7 (2024) (quoting *Gross v. Cicero*, 619 F.3d 697, 702 (7th Cir. 2010)) (cleaned up). That all means that we are required to take the cases as we find them.

So whether an appeal is frivolous must, at least in part, be based on the arguments that the parties make. If we could call an appeal frivolous only when we determine that the appellant could never make an argument in support of reversal, then we would be forced to construct our own theory of the case to determine if any good faith arguments could be made to support it.

Instead, we decide whether the appeal is frivolous based on the arguments actually made.  And that is the core of how courts define a frivolous-as-argued appeal.  *See Finch*, 926 F.2d at 1579 ("In the second type of frivolity, while genuinely appealable issues *may* exist, the appellant's contentions in prosecuting the appeal are frivolous.").

Whiting's appeal is frivolous as argued because Irion and Egli submitted fake cases, and inventing case law is a misrepresentation of law.**2**  "A fake opinion is not existing law[,] and citation to a fake opinion does not provide a non-frivolous ground for extending, modifying, or reversing existing law, or for establishing new law.  An attempt to persuade a court or oppose an adversary by relying on fake opinions is an abuse of the adversary system."  *Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443, 461 (S.D.N.Y. 2023) (cleaned up); *see also, e.g.*, *Fletcher v. Experian Sols., Inc.*, No. 25-20086, 2026 WL 456842, at *6 (5th Cir. Feb. 18, 2026); *Garner v. Kadince, Inc.*, 571 P.3d 812, 815 (Utah Ct. App. 2025) (per curiam); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 495 (D. Wyo. 2025).  Like Federal Rule of Civil Procedure 11, Federal Rule of Appellate Procedure 38 imposes a duty to present arguments that are well-grounded in law and fact or "[]supported by a reasoned, colorable argument for change in the law."  *Coleman v. Comm'r*, 791 F.2d 68, 71 (7th Cir. 1986); *see also* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* § 32 (6th ed. Dec. 2025 Update) (*Sanctions*).  Submitting fake cases does not meet this standard.

True, some of the cases Whiting cited existed, and some of the propositions of law were legitimate.  But we "reject[] any . . . notion that because some authority exists to support a legal proposition it should negate the harm caused by false and hallucinated cases. Put bluntly—absolutely not; period; end of story; all stop."  *United States v. McGee*, 806 F. Supp. 3d 1264, 1273 (S.D. Ala. 2025).  Citing even a single fake case can be sanctionable because "no brief, pleading, motion, or any other paper filed in any court should contain *any* citations—whether

---

**2**Citing fake cases could be evidence that the appeal is frivolous as filed.  Consider, for example, that when AI is used to prepare a brief, "AI hallucinations are more likely to occur when there are little to no existing authorities available that clearly satisfy the user's request—such as, for example, when a lawyer asks a generative AI tool to supply a citation for an unsupported principle of law."  *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 911 (Ct. App. 2025) (quoting *In re Richburg*, 671 B.R. 918, 924 n.11 (Bankr. D.S.C. 2025)) (cleaned up).  But we decline to find here that the citation of fake cases made Whiting's appeal frivolous as filed because we think at least some legitimate case law might have supported reversal, even though we ultimately affirmed the district court.

provided by generative AI or any other source—that" a lawyer has not personally "read and verified."  *Noland v. Land of the Free, L.P.*, 336 Cal. Rptr. 3d 897, 901 (Ct. App. 2025). Moreover, citing fake cases can "harm [] the reputation of judges and courts whose names are falsely invoked as authors of the bogus opinions and [] the reputation of a party attributed with fictional conduct."  *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1347 (S.D. Fla. 2025) (quoting *Mata*, 678 F. Supp. 3d at 448).

Whiting's appeal in No. 25-5424 is also frivolous as argued because he misrepresents the record in that case.  He contends that the district court issued sanctions in No. 25-5424 sua sponte, *see* Appellant's Br. in No. 25-5424 at 21 ("Here, Appellants received no order to show cause, no opportunity to brief threshold issues, and no warning that § 1927 was at issue. The sua sponte imposition of sanctions violates procedural due process."), but the sanctions were issued on the City's motion, *see* R. 234, Defs. Omnibus Mem. ISO Mot. for Att'y Fees, PageID 2491 ("The defendants are entitled to an award of reasonable attorney fees pursuant to 28 U.S.C. § 1927." (capitalization and bolding altered)).  That one factual misrepresentation changes the analysis because Whiting's entire argument is that he was not given notice of the sanctions that would be imposed.  But if someone files a motion expressly asking for sanctions under § 1927, then no reasonable litigant could say he was not on notice of that possibility.

Sanctions are therefore appropriate under Rule 38.

**2.**

We also impose penalties on Irion and Egli pursuant to our inherent authority.  Although we do not invoke it often, we have long recognized that appellate courts have the "plenary power" to sanction a litigant whose appeal is "frivolous."  *Moist v. Belk*, 380 F.2d 721, 724 (6th Cir. 1967); *Chambers v. Colonial Pipeline Co.*, 408 F.2d 678, 678 (6th Cir. 1969) (per curiam). More commonly invoked as part of the courts' inherent authority, these powers are "necessary for [us] to function as an institution."  *In re Smothers*, 322 F.3d 438, 442 (6th Cir. 2003).  They "result to our Courts of justice from the nature of their institution, powers which cannot be dispensed with in a Court, because they are necessary to the exercise of all others."  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (quoting *United States v. Hudson*, 11 (7 Cranch) U.S. 32,

34 (1812)) (quotation marks omitted).  The courts' inherent powers include the "power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates, and, as a corollary to this proposition, to preserve themselves and their officers from the approach and insults of pollution."  *Anderson v. Dunn*, 19 U.S. (6 Wheat.) 204, 227 (1821).

Courts have these powers because when certain forms of misconduct are "not instantly suppressed and punished, demoralization of the court's authority will follow."  *Cooke v. United States*, 267 U.S. 517, 536 (1925).  These powers let us "protect[] the due and orderly administration of justice" and "maintain[] the authority and dignity of the court."  *Id.* at 539; *see also Ex parte Robinson*, 86 U.S. (19 Wall.) 505, 510 (1873).  "These powers are governed not by rule or statute but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases."  *Chambers*, 501 U.S. at 43 (quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 630–31 (1962)) (quotation marks omitted).  So statutes governing sanctions do not restrict our inherent authority.  Rather, those laws have been enacted "as an instance of abundant caution" to protect our inherent powers, "or a legislative declaration[] that the power of punishing for contempt shall not extend beyond its known and acknowledged limits."  *Anderson*, 19 U.S. (6 Wheat.) at 227–28.

Inherent authority sanctions are appropriate only when the litigant has acted in bad faith or "willfully abuse[d] judicial processes."  *Red Carpet Studios Div. of Source Advantage, Ltd. v. Sater*, 465 F.3d 642, 646 (6th Cir. 2006).  Put differently, our case law "requires a finding of bad faith or of conduct 'tantamount to bad faith'" before we can issue inherent authority sanctions.  *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 752 (6th Cir. 2010) (quoting *Youn v. Track, Inc.*, 324 F.3d 409, 420 (6th Cir. 2003)) (emphasis deleted).

A three-prong test determines whether an attorney for a plaintiff has acted in bad faith so as to permit an award of attorney's fees as a sanction.  *First*, the lawsuit must be meritless, at least in part.  *BDT Prods.*, 602 F.3d at 752; *see also United States v. Akers*, 76 F.4th 982, 991 (10th Cir. 2023).  *Second*, we must find that the litigant knew or should have known that the case was meritless.  *BDT Prods.*, 602 F.3d at 752.  *Third*, we must conclude that the litigant had an improper motive.  *Id.*

"Harassing the opposing party, delaying or disrupting litigation, hampering the enforcement of a court order, or making improper use of the courts are all examples of the sorts of conduct that will support a finding of bad faith or improper purpose." *Id.* at 754. Additionally, a litigant acts in bad faith when he "use[s] the court system to try to force a result that [he] could not obtain under the applicable law." *First Bank of Marietta v. Hartford Underwriters Ins. Co.*, 307 F.3d 501, 525 (6th Cir. 2002). After all, "[b]ad faith . . . is not restricted to situations where the action was filed in bad faith. Bad faith may also be found in the conduct of the litigation." *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1090 (9th Cir. 2021).

Inherent authority sanctions are appropriate in this case. We have already concluded that Whiting's appeal in this court is meritless, and any reasonable attorney should know that a case is meritless if the only authority on which he can rely is a figment of imagination. Finally, we conclude that Irion and Egli have acted with an improper purpose because they have "used the court system to try to force a result that [they] could not obtain under the applicable law." *First Bank of Marietta*, 307 F.3d at 525. Further, when given an opportunity to explain how such citations appeared in their briefing, Irion and Egli failed to provide an explanation and instead argued that the court's show cause order was void and invalid.

Although citing fake cases violates Federal Rule of Appellate Procedure 38, Rule 38 alone is not "up to the task" of sanctioning this conduct, *Chambers*, 501 U.S. at 50, because Rule 38 allows only for the imposition of costs and attorneys' fees, *Sanctions* § 33. But we think other sanctions are also appropriate, so we employ our inherent authority.

Our conclusion aligns with that of other courts that have used their "inherent authority to sanction the misuse of AI when it affects the Court's docket, case disposition, and ruling." *Versant Funding LLC v. Teras Breakbulk Ocean Navigation Enters., LLC*, No. 17-CV-81140, 2025 WL 1440351, at *3 (S.D. Fla. May 20, 2025); *see Fletcher*, 2026 WL 456842, at *6. True, courts have generally relied on a codified rule, specifically Federal Rule of Civil Procedure 11, instead of their inherent authority, *see, e.g.*, *Mata*, 678 F. Supp. 3d at 459, but the district courts generally have much more discretion in crafting a sanction under Rule 11 than we do under Federal Rule of Appellate Procedure 38, *see Sanctions* §§ 16, 33; *compare Parrish*, 989 F.3d at

458 (imposing only attorneys' fees as a sanction under Rule 38), *with King v. Whitmer*, 71 F.4th 511, 519–20 (6th Cir. 2023) (imposing CLE hours, attorneys' fees, and disciplinary referrals under Rule 11). Accordingly, we must look to our inherent authority to fashion an appropriate sanction.

**B.**

Although Irion and Egli did not seriously respond to our show cause order, we construe their responses as making four objections: (1) the show cause order violated Sixth Circuit Local Rule 46, (2) attorney-client and work-product privilege excused compliance with the show cause order, (3) the order was invalid because it allegedly came from several ex parte communications, and (4) the order is void because the clerk signed it.

The show cause order did not violate Local Rule 46. Local Rule 46 governs suspension, disbarment, and other forms of attorney discipline. *See* 6th Cir. Local Rule 46(c)(3). But the rule expressly contemplates that this court could impose litigation sanctions and "does not limit the court's" power to do so. *Id.* The show cause order cited Federal Rule of Appellate Procedure 38 and *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991), which govern sanctions for a frivolous appeal and inherent authority sanctions, respectively. Put simply, the show cause order did not initiate disciplinary proceedings under Local Rule 46, nor do we impose discipline under that rule. Instead, we exercise our inherent authority and our powers under Rule 38 to sanction Irion and Egli for bad-faith litigation conduct.

Our suggestion that the briefs may have been ghostwritten[3] does not support Irion's and Egli's challenge to the show cause order, either. The Eastern District of Tennessee's decision finding that Irion improperly ghostwrote pleadings is on Bloomberg, LexisNexis, and Westlaw. *See In re Irion*, No. 1:24-DM-7, 2025 BL 286140, 2025 LX 350467, 2025 WL 2319537, at *31–

---

[3]Ghostwriting is when one person writes the document while another person takes credit for it without acknowledging the true author's identity. *See The American Heritage Dictionary of the English Language* 741 (4th ed. 2000). Legal authorities generally discuss ghostwriting for a pro se litigant, *see, e.g.*, *Duran v. Carris*, 238 F.3d 1268, 1272 (10th Cir. 2001), but we see no reason why rules regulating ghostwriting should apply in only the pro se context. The primary concern with ghostwriting is that the true author would escape liability for his conduct, *see In re Mungo*, 305 B.R. 762, 768 (Bankr. D.S.C. 2003); *Ellis v. Maine*, 448 F.2d 1325, 1328 (1st Cir. 1971), and that concern is just as acute when a lawyer ultimately signs the ghostwritten pleading.

No. 24-5918/5919/25-5424     *Whiting v. City of Athens, Tenn.*                    Page 11

32 (E.D. Tenn. Aug. 4, 2025).  Irion has appealed that order to our court, which is docketed in this court under docket number 25-5874.  No one, therefore, should be surprised that we would find out about the ghostwriting.

Our order does not violate the work-product or attorney-client-privilege doctrines, either.  Under those doctrines, we may not compel the disclosure of a lawyer's notes, prior drafts of briefs, or legal advice absent waiver.  *See, e.g.*, *In re Columbia/HCA Healthcare Corp. Billing Pracs. Litig.*, 293 F.3d 289, 294 (6th Cir. 2002).  But the order to show cause sought no such thing.  Whether and how the briefs were cite-checked does not implicate conversations regarding legal advice, nor do they ask for any work product of any kind.

Finally, our orders are not invalid simply because the clerk signed them.  We have already told Irion and Egli that our orders are not void when the clerk signs them *in this very case*.  *Whiting v. City of Athens*, No. 24-5886, 2025 U.S. App. LEXIS 13507, at *1 (6th Cir. June 2, 2025).  And the Supreme Court has twice denied petitions for mandamus from Irion and Egli demanding that the clerk stop signing our orders.  *See In re Murphy*, 146 S. Ct. 286 (2025); *In re Irion*, No. 25-785 (U.S. Mar. 9, 2026).  Neither Irion nor Egli points us to any authority saying that the clerk may not sign our orders.[4]

---

[4]Irion and Egli have repeatedly questioned our practice of letting the clerk sign our orders, even suggesting that she is deciding cases without us knowing about it.  *See* Pet. for Writ of Mandamus and/or Prohibition, *In re Irion*, No. 25-785, at *1 (U.S. Jan. 5, 2026).  Irion's and Egli's concerns are baseless, as a recitation of relevant facts reveals.

The dispute underlying the consolidated appeals first came before this panel in 2024, when we decided the merits of Whiting's claims in No. 24-5918.  *See generally Whiting v. City of Athens*, No. 23-6082, 2024 WL 3537651 (6th Cir. July 25, 2024).  After we decided that case, the district court sanctioned Whiting, and Whiting appealed that order.  R. 57, Order, PageID 667 (No. 24-5918); R. 58, Notice of Appeal, PageID 680 (No. 24-5918).

That triggered our must panel procedure.  "In appeals after this court returns a case to the lower court or agency for further proceedings, or after the Supreme Court of the United States remands a case to this court, the original panel will determine whether to hear the appeal or whether it should be assigned to a panel at random."  6th Cir. I.O.P. 34(b)(1).  We accepted the must panel.  Appellees' briefing also said that Nos. 24-5919 and 25-5424 were pending before us, Appellees' Br. in No. 24-5918 at 13–14, so we reviewed the briefs in those cases, saw they were related to No. 24-5918, and consolidated them, Order of 8/28/2025 at 1; *see, e.g.*, 16A *Wright and Miller's Federal Practice and Procedure* § 3949.2 (5th ed. Sept. 2025 Update); *Circle City Broad. I, LLC v. AT&T Servs., Inc.*, 99 F.4th 378, 383 (7th Cir. 2024).

Prompted by a footnote in the City's briefing suggesting that the citations in Whiting's briefs were illegitimate, *see* City's Br. in No. 25-5424 at 22 n.8, we then issued a show cause order, with the circuit clerk (per our customary procedure) signing the order.

**C.**

The final question, then, is what our sanctions in this case should be.

Under Federal Rule of Appellate Procedure 38, we can award damages and single or double costs. "The amount awarded as just damages may include all of the expenses incurred on appeal," including "an award of attorneys' fees," "or any lesser sum that the court deems appropriate." *Sanctions* § 33. Rule 38 does not require us to determine whether the attorneys' fees were "reasonable," so we can award whatever amount the appellee's counsel charged the appellee if we are so inclined. *See Sun-Tek Indus. v. Kennedy Sky-Lites, Inc.*, 865 F.2d 1254, 1255 (Fed. Cir. 1989). And the costs that can be awarded are those listed in 28 U.S.C. § 1920. *Sanctions* § 33.

Our inherent authority powers are much broader. The "inherent power sanctions available to courts include fines, awards of attorneys' fees and expenses, contempt citations, disqualifications or suspensions of counsel, and drawing adverse evidentiary inferences or precluding the admission of evidence." *Shepherd v. ABC*, 62 F.3d 1469, 1475 (D.C. Cir. 1995).

These sanctions protect the legitimacy of our proceedings. Our adversarial system works only when "lawyers and courts alike are able to rely on one another's representations." *Azar v. Garza*, 584 U.S. 726, 730 (2018) (per curiam). To that end, we expect all lawyers appearing before us "to accurately represent the contents of the record." *Pemberton v. Bell's Brewery, Inc.*,

---

After appellees filed their response to the show cause order (which we explicitly invited), Irion and Egli moved to strike that response. We then issued an order denying the motion to strike, again with the circuit clerk's signature on the order. Irion and Egli filed an objection and appeal of that order, asserting that they were "entitled to have the motion to strike reviewed by the Sixth Circuit Judges." Objection and Appeal in No. 25-5424 at 1, 6. The clerk instructed Irion and Egli to refile that motion because it did not comply with our local rules. Irion and Egli then moved to have the panel instruct the clerk to accept the objection and appeal, asserting that the clerk was "unconstitutional[ly] practicing [] law rather than filing documents as required by law." Motion to Unlock in No. 25-5424 at 1. The judges reviewed the motion and issued an order denying that motion. Again, our order bore the circuit clerk's signature.

In response, Irion and Egli petitioned the Supreme Court for a writ of mandamus and/or prohibition, suggesting that the judges on the panel are not reviewing their motions or their cases and that the clerk of court is deciding cases in parallel to the judges on the court. That petition was denied. *See In re Irion*, No. 25-785 (U.S. Mar. 9, 2026).

We are aware of Irion's and Egli's motions, and we have personally reviewed each of them. We also personally reviewed and drafted the order to show cause. The mere fact that the clerk signed them does not change that, nor does it suggest any impropriety on our part or hers.

150 F.4th 751, 769 n.6 (6th Cir. 2025).  After all, if lawyers and judges cannot trust each other, legal advocacy would quickly become pointless, and we would face litigants "tempted to defy a judicial ruling by disingenuously claiming doubt about its authenticity."  *Mata*, 678 F. Supp. 3d at 448–49.

The Supreme Court of Tennessee, which has primary supervisory authority over Irion and Egli as Tennessee-based attorneys, has said that violating the duty of candor to the tribunal "unnecessarily impede[s]" the "resolution" of the cases that the lawyers are litigating and is therefore "prejudicial to the administration of justice."  *Dunlap v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 595 S.W.3d 593, 615 (Tenn. 2020).  The American Bar Association (ABA), whose Model Rules of Professional Conduct govern the practice of law in this court, *see* 6th Cir. Local Rule 46(c)(1)(A), agrees, noting that violating the duty of candor to the tribunal can "render[] the litigation a sham," prejudicing the rights of all involved.  *Disclosure Obligations of a Lawyer Who Discovers that Her Client Has Violated a Court Order During Litigation*, ABA Formal Op. 98-412 (Sept. 9, 1998).

We wholeheartedly agree.  Irion and Egli breached the trust that we must have in the lawyers appearing before us.  They have brought the profession into disrepute.  Irion's and Egli's failure to comply with the basic rules of our profession has forced us and the City to unnecessarily expend time and resources on a case that should have been litigated and resolved straightforwardly but was not.  More importantly, by breaching our trust, we can no longer rely on the representations in Irion's and Egli's briefs, harming both their clients (whose cases are now viewed with skepticism) and this court (who must now independently verify everything Irion and Egli write).  Finally, Irion and Egli have sullied the reputation of our bar, which now must litigate under the cloud of their conduct.  We therefore issue these sanctions to Irion and Egli, the rationales for which we will explain below:

1. Irion and Egli must jointly and severally reimburse appellees in full for their reasonable attorneys' fees on appeal in all three appeals.

2. Irion and Egli must jointly and severally pay double costs to appellees for costs incurred under 28 U.S.C. § 1920 on appeal in all three appeals.

3. Appellees must file an accounting of their costs and attorneys' fees on appeal, with supporting documentation, no later than seven days from the date of this

order.  Irion and Egli shall file any responses or objections to appellees' requests for costs and attorneys' fees on appeal no later than seven days thereafter.  There will be no replies.

4. Irion and Egli must each separately and individually pay $15,000 to the registry of this court as punitive sanctions for the proceedings in this court in all three appeals.

5. The clerk will forward a copy of this order to the chief judge to consider disciplinary proceedings under Sixth Circuit Local Rule 46.

6. If Irion and Egli are financially unable to comply with some or all of the requirements of this order, they must file an affidavit under seal describing their financial situation along with their objections to appellees' fee requests.

A substantial penalty is necessary to compensate the City for the time spent dealing with Whiting's litigation and for having to deal with the rampant misconduct Irion and Egli committed on appeal.[5]  Although courts often limit the amount of fees to "those the losing party foisted on the winner," *In re Cent. Ice Cream Co.*, 841 F.2d 732, 735 (7th Cir. 1988), the pervasive misconduct makes these appeals almost entirely frivolous.  We found systemic problems with Whiting's briefing, including misrepresentations of fact and law, improper citation formatting, an inadequate record, and copious drafting errors.  Even if there might have been a grain of merit in these appeals, we can disregard the non-frivolous aspects and treat the entire appeal as frivolous.  *Waldman*, 854 F.3d at 855.  Given how many problems there were in this case, we conclude that appellees should be fully compensated for being forced to litigate this appeal.

We award double costs to appellees because that is the stiffest penalty available under Rule 38.  Rule 38 is supposed "to deter frivolous appeals and thus preserve the appellate calendar for cases worthy of consideration."  *Pac-Tec, Inc. v. Amerace Corp.*, 903 F.2d 796, 804 (Fed.

---

[5]We could have gone much further.  Other courts have dismissed cases, disqualified lawyers, or revoked their pro hac vice status for similar conduct.  *ByoPlanet Int'l, LLC v. Johansson*, 792 F. Supp. 3d 1341, 1357 (S.D. Fla. 2025); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1267–68 (N.D. Ala. 2025); *Wadsworth v. Walmart Inc.*, 348 F.R.D. 489, 499 (D. Wyo. 2025).  But only the chief judge can suspend or disbar a lawyer from practice before this court, *see* 6th Cir. Local Rule 46(c)(4)(C), so those sanctions are not available to us, and we choose not to sanction Whiting himself because we have no evidence that Whiting participated in the misconduct.

Finally, we could have held Irion and Egli in contempt because they flagrantly ignored our order to show cause.  *See, e.g.*, *NLRB v. Bannum, Inc.*, 93 F.4th 973, 979–80 (6th Cir. 2024); *Int'l Union, United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 826–30 (1994).  But we do not think additional sanctions are necessary to send the message we send here.

Cir. 1990).  Double costs will send the loudest message that this type of conduct is not allowed in our court or any other.

We can issue fines when issuing inherent authority sanctions, *Shepherd*, 62 F.3d at 1475, and courts have generally issued fines for similar misconduct, *see, e.g.*, *Mata*, 678 F. Supp. 3d at 466; *Wadsworth*, 348 F.R.D. at 499.  We agree that this is appropriate.  Citing fake cases "unnecessarily burdens the court and the taxpayers," so courts can and should fine the offending lawyers to reimburse the court for its time.  *Noland*, 336 Cal. Rptr. 3d at 914.  A lawyer's misrepresentation of the law and facts heavily burdens the courts and their staffs.  We rely on good briefing to narrow and clarify the issues for our review while helping us locate the facts and the law that will govern the case.  *See, e.g.*, *A1 Diabetes & Med. Supply v. Azar*, 937 F.3d 613, 620 (6th Cir. 2019); *Goodwin v. Unum Life Ins. Co. of Am.*, 137 F.4th 582, 589 n.2 (6th Cir. 2025).  But we did not have that assistance from Whiting's counsel because we could not rely on any of their briefing to truthfully explain the facts and governing law.  Their submission of fake cases and factual misrepresentations forced the court to individually verify every single citation to determine the appropriate sanction.  To call these consolidated appeals a burden would be an understatement.  We choose $15,000 each because (1) the misconduct was spread across three cases instead of just one and (2) smaller fines have plainly been inadequate—as is evidenced by the continuous stream of cases raising the same problems.

Four additional aggravating factors in this case warrant particularly harsh sanctions.

*First*, Irion and Egli are appealing sanctions orders, and they have engaged in further misconduct.  Although the district court's sanctions orders were for filing frivolous lawsuits instead of for lacking candor to the tribunal, we find it deeply concerning that a lawyer would engage in further misconduct on appeal from a finding that they engaged in misconduct.  *See Nevin v. Bd. of Pro. Resp. of Sup. Ct. of Tenn.*, 271 S.W.3d 648, 658 (Tenn. 2008) ("repeated misconduct" warrants harsher discipline); ABA Standards for Imposing Lawyer Sanctions § 8.2 (2d ed. 2019) (similar).

*Second*, Irion and Egli have been disciplined for lack of candor to the tribunal before.  In 2017, the Supreme Court of Tennessee publicly censured Egli for lack of candor to the tribunal.

*See In re Egli*, No. M2017-00608-SC-BAR-BP (Tenn. Mar. 30, 2017) (per curiam).   And in August 2025 (while Irion and Egli were briefing these appeals), Irion was suspended from the Eastern District of Tennessee for five years because he lied to the district court in No. 25-5424. *In re Irion*, 2025 WL 2319537, at *13, *37.   Despite this, both Irion and Egli submitted several briefs to this court with fake citations and misrepresentations of the record.

*Third*, Irion and Egli defied this court's order to show cause and refused to provide the information we requested.   For over 150 years, the Supreme Court has said that litigants *must* comply with court orders, whether they are erroneous or not.   *See, e.g.*, *Howat v. Kansas*, 258 U.S. 181, 189–90 (1922); *In re Chiles*, 89 U.S. (22 Wall.) 157, 169 (1874).   If a lawyer or litigant fails to comply with a court order, he is subject to contempt, even if the order is ultimately reversed or vacated.   *Maness v. Meyers*, 419 U.S. 449, 458–60 (1975); *Worden v. Searls*, 121 U.S. 14, 26–27 (1887).   By refusing to comply with the order, Irion and Egli have only compounded the violations for which we sanction them in this case.

*Fourth*, the responses to the show cause order that Irion and Egli did file show a stunning lack of respect for this court, the members of the panel and their staffs, and the rule of law.   Most litigants caught submitting fake cases have apologized and sought forgiveness, rightly recognizing the seriousness of their misconduct.   *See, e.g.*, *Al-Hamim v. Star Hearthstone, LLC*, 564 P.3d 1117, 1125 (Colo. Ct. App. 2024); *Elizondo v. City of Laredo*, No. 5:25-CV-50, 2025 WL 2071072, at *3 (S.D. Tex. July 23, 2025).   By contrast, Irion and Egli scolded this court and accused it of engaging in a vast conspiracy to harass them.   More severe sanctions are clearly warranted to deter misconduct like this.

## III.

The courts are, should be, and must be, open to all litigants who have suffered harms at the hands of the government.   And nothing in this opinion should be construed as a holding that Irion and Egli were appropriately sanctioned simply because they lost.   That is far from the truth. Irion and Egli have engaged in a coordinated effort to harass the City of Athens, Tennessee, and its employees through non-stop litigation over the past five years.   They asserted claims that they knew were meritless to drain the resources of the City.   They then compounded the problems by

submitting briefs to this court with fake citations and factual misrepresentations and defying the order to show cause why they should not be sanctioned.  To protect the integrity of our proceedings, we take the measures outlined in section II.C.

The panel will retain jurisdiction to the extent required to enforce the terms of this opinion.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*    Page 18

---

**APPENDIX**

---

**Appellant's Brief in No. 25-5424**

- On pages 1, 13, and 20, Whiting cites "*Jones v. Hamilton Cnty.*, 29 F.4th 647, 655 (6th Cir. 2022)," for the proposition that we review sanctions under "42 U.S.C. § 1927" for an abuse of discretion. The Federal Reporter citation does not correspond with a Sixth Circuit decision. The decision at 29 F.4th 647 is a Tenth Circuit unfair competition case. *See Bimbo Bakeries USA, Inc. v. Sycamore*, 29 F.4th 630, 647 (10th Cir. 2022). And the decision at 29 F.4th 655 is a Tenth Circuit appeal from a guilty plea. *See United States v. McIntosh*, 29 F.4th 648, 655 (10th Cir. 2022). Neither Tenth Circuit case discusses attorneys' fees or sanctions. This court has issued a decision captioned "*Jones v. Hamilton County*," but it was an unpublished opinion from 2023. *See Jones v. Hamilton Cnty.*, No. 23-3002, 2023 WL 7391704 (6th Cir. Nov. 8, 2023) (per curiam), *cert. denied*, 144 S. Ct. 1098 (2024). That case does hold that we review sanctions under 28 U.S.C. § 1927 for an abuse of discretion. *See id.* at *3. But it does not, as Whiting stated, hold that "pro se litigants are not subject to § 1927." Appellant's Br. 20. To the contrary, *Jones* affirmed the district court's imposition of sanctions under § 1927. *Jones*, 2023 WL 7391704, at *3.

- On pages 3, 14, 22, and 23, Whiting cites "*Espinosa*, 559 U.S. 260 (2010)" and "*Espinosa v. United Student Aid Funds, Inc.*, 559 U.S. 260, 272 (2010)," for the proposition that the district court violated Whiting's due process rights by failing to give him enough time to prepare his pleadings and by denying him access to the CM/ECF electronic filing system. But the case is actually captioned "*United Student Aid Funds, Inc. v. Espinosa*." Moreover, it was about whether the bankruptcy court should have granted Rule 60(b) relief because the debtor did not serve a creditor with a summons and complaint in an adversary proceeding.

*United Student Aid Funds, Inc. v. Espinosa*, 559 U.S. 260, 264 (2010).  It had nothing to do with unreasonable deadlines or ECF access.

- On page 4, Whiting cites paragraph 32 of his Complaint to assert that "citizens were forced to park on highways and streets," but it states no such thing.  *See* R. 31, Complaint, PageID 323.

- On page 16, Whiting cites "*Berg v. Knox Cnty., TN*, 2024 WL 2012345, at *4 (6th Cir. Mar. 12, 2024)," for the proposition that "recusal [is] mandated when extrajudicial commentary demonstrates bias."  We cannot find this case.  The WL citation does not generate a case.  We could not find the opinion in our opinions archive.  Indeed, the only source on Westlaw that cites to a Sixth Circuit decision called "*Berg v. Knox Cnty.*" is Whiting's briefing in this case.  We found three district court opinions captioned as "*Berg v. Knox County, Tennessee*" in Westlaw, but none of them discuss judicial recusals.  *See generally Berg v. Knox County*, No. 3:20-CV-00019-DCLC, 2020 WL 7078374 (E.D. Tenn. Sept. 28, 2020); *Berg v. Knox County*, No. 3:22-CV-272-KAC-JEM, 2023 WL 122904 (E.D. Tenn. Jan. 6, 2023); *Berg v. Knox County*, No. 3:20-CV-19-DCLC-HBG, 2020 WL 13888749 (E.D. Tenn. Dec. 17, 2020).

- On pages 17 and 19, Whiting cites "T.C.A. § 29-12-119," but we cannot find a section 29-12-119 in the Tennessee Code Annotated.

- On pages 17 and 20, Whiting quotes *Fox v. Vice*, 563 U.S. 826 (2011), for the propositions that (1) "fee awards 'must be limited to the hours reasonably expended on' the frivolous claim," (2) "[t]he Court 'may make . . . a percentage reduction'" of a lawyer's requested fees, and (3) "[u]nsupported 'attorney conjecture' on apportionment" of attorneys' fees "is impermissible."  None of those quotes (which we have not modified) appear in *Fox*.

No. 24-5918/5919/25-5424     *Whiting v. City of Athens, Tenn.*           Page 20

## Appellant's Brief in No. 24-5918

- On page 3, Whiting asserts that another person was successfully intimidated out of suing the City for fear of retaliation, but the exhibit Whiting cites states no such thing. *See* R. 42-4, Exhibit, PageID 568–77.

- On page 14, Whiting states, "The District 'Court must accept as true all the factual allegations in the Complaint and construe it in the light most favorable to Plaintiff.' *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)." That quoted language does not appear in *Morgan*. *See* 829 F.2d at 11–12 & n.2.

- On page 14, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases. *See* 227 F.3d at 348.

## Reply Brief in No. 24-5918

- On page 1, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases. *See* 227 F.3d at 348.

- On pages 4–5, Whiting states (unmodified on our part):

  However, to award fees the District Court had to find that the claims were completely without merit. *Fox*, 563 U.S. at 834. As this Court has repeatedly explained, "[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous." *Adcock-Ladd*, 227 F.3d at 350. In other words, failure to achieve reversal on the merits of the underlying claim on appeal does not mean that the claim was frivolous. *Id*. These are two different standards. Yet both require consideration of the merits or lack thereof of the underlying claims.

The quote does not appear in *Adcock-Ladd*, and neither *Fox* nor *Adcock-Ladd* supports the other propositions stated in the quote.

**Appellant's Brief in No. 24-5919**

- On page 4, Whiting states "it is well settled that the First Amendment does not protect speech that knowingly asserts false statements of fact. *United States v. Alverez*, 567 U.S. 709, 721 (2012)." *Alvarez* states the opposite: "This opinion . . . rejects the notion that false speech should be in a general category that is presumptively unprotected." *Id.* at 721–22 (plurality opinion).

- On page 5, Whiting states, "Yet the District Court's order clearly rejects plaintiff's assertion that the defendant Mayor's statements were false. *See* R.44 at PageID#375." PageID 375 is part of Record Entry 31, and neither Record Entry 44 nor PageID 375 supports such an assertion.

- On pages 6 and 15–16, Whiting asserts that the Supreme Court overruled the district court's legislative immunity analysis in *Lindke v. Freed*, 601 U.S. 187 (2024). But *Lindke* is about the appropriate test to apply to determine whether a public official engages in state action under § 1983 when he blocks someone on social media. 601 U.S. at 190–91. The case had nothing to do with legislative immunity.

- On pages 6 and 15–16, Whiting asserts that we "noted" the "murkiness" of the legislative immunity analysis as applied to social media posts in *Lindke v. Freed*, 37 F.4th 1199, 1202 (6th Cir. 2022), *vacated and remanded*, 601 U.S. 187 (2024). But again, *Lindke* was not about legislative immunity. *See Lindke*, 37 F.4th at 1202.

- On page 7, Whiting states, "The District 'Court must accept as true all the factual allegations in the Complaint and construe it in the light most favorable to Plaintiff.' *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)." That quoted language does not appear in *Morgan*. *See* 829 F.2d at 11–12 & n.2.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*    Page 22

- On page 8, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases. It is about whether attorneys' fees should be based on the plaintiff's or the defendant's home market. *See Adcock-Ladd*, 227 F.3d at 348.

- On page 14, Whiting cites *Kent State Univ. Bd. of Trs. v. Lexington Ins. Co.*, 512 F. App'x 485 (6th Cir. 2013), and states in a parenthetical that we "affirm[ed] denial of fees where bare affidavits were insufficient." In *Kent State* we affirmed a district court's ruling granting attorneys' fees and rejected an argument that "the failure to provide appropriate documentation should bar a court from awarding any fees at all." 512 F. App'x at 493–94.

- On page 19, Whiting has the following block quote (without modification on our part):

> [O]ne purpose of the provision in 28 U.S.C. § 455 that any judge of the United States shall disqualify himself in any case in which he has been a material witness, is to prevent the judge from having to pass on the competence and veracity of his own testimony given with respect to the matter presently in controversy before him. *In re Continental Vending Machine Corp.*, 543 F.2d 986 (2d Cir. 1976).

Although *Continental Vending* supports this proposition, this quote does not appear in the decision.

### Reply Brief in No. 24-5919

- On page 1, Whiting states, "This Court has made clear that , [*sic*] '[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous.' *Adcock-Ladd v. Secretary of the Treasury*, 227 F.3d 343, 350 (6th Cir. 2000)." *Adcock-Ladd* does not contain the quoted language, and it is not about frivolous cases. *See* 227 F.3d at 348.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*    Page 23

- On pages 1–2, Whiting states, "Appellees' brief asserts in its summary that 'The Appellant waived his right to contest the underlying motion for fees because he did not file any response in the District Court.' (Doc.32, at Page 15). Appellees' statement is a lie." (footnote omitted). That quote does not appear in the City's brief. Instead, the City states that Whiting "waived his right to contest" the fees and sanctions motion "because he did [not] *timely file a response*." City's Brief in No. 24-5919 at 9 (emphasis added).

- On page 2, Whiting states:

  Later in the same brief Appellees admit that Appellant did file an opposition to the motion for attorney's fees: 'Though the Appellant responded in opposition to the Appellees' original Motion for Attorney Fees which was mooted by the reissued Memorandum Opinion, the Appellant never responded to the Appellee's Second Motion for Attorney Fees.' *Id*. at p.22.

That quote does not appear in the City's Briefing in No. 24-5919.

- On page 2, Whiting states:

  Appellants explained the situation in their initial brief: "Judge McDonough's order granting attorney's fees against the plaintiff and his attorney asserts that the plaintiff failed to oppose defendants' motions for fees. *(R.57 at PageID#669-70)*. This is a mischaracterization. The plaintiff did oppose. *(R.37, P's Opp. Mtn. Atty. Fees)*. However, McDonough withdrew his initial order and replaced it a week prior to plaintiff filing his opposition. McDonough's statements on 'Timeliness' in his order *explains that plaintiff's opposition was filed in response to defendants' first motion for attorney's fees, and that defendants filed a revised motion after plaintiff had filed his opposition to defendants' first motion. The motions and response asserted the same facts and arguments. McDonough was well aware that the plaintiff had filed a substantive response, but rather than recognizing this procedural timing error, caused by the Court's erroneous entry of its first order, McDonough instead concluded that the plaintiff had not opposed defendants' second motion.* This is yet another example of McDonough's vehement bias against the plaintiff." (Doc.29, Appellant Br. at FN2 [*sic*]). Yet Appellees' brief simply ignores this statement and reiterates the District Court's ruling.

No. 24-5918/5919/25-5424    *Whiting v. City of Athens, Tenn.*                    Page 24

The italicized portions of that quote do not appear in footnote two of Whiting's brief.

- On page 2, Whiting states, "Appellees assert 'The Appellant also did not appeal the dismissal of the defamation claim in the first appeal, and now cannot protest that the District Court's ruling on that defamation claim was incorrect.' Again, the Appellees fail to cite ANY authority in support of this statement, because it is an erroneous assertion of law." That quote does not appear in the City's brief.

- On page 3, Whiting states (unmodified on our part):

> However, to award fees the District Court had to find that the claims were completely without merit. *Fox*, 563 U.S. at 834. As this Court has repeatedly explained, "[T]he mere fact that a plaintiff did not prevail does not mean that the claim was frivolous." *Adcock-Ladd*, 227 F.3d at 350. In other words, failure to achieve reversal on the merits of the underlying claim on appeal does not mean that the claim was frivolous. *Id*. These are two different standards. Yet both require consideration of the merits or lack thereof of the underlying claims.

The quote does not appear in *Adcock-Ladd*, and neither *Fox* nor *Adcock-Ladd* supports the other propositions stated in the quote.

### The Show Cause Responses

- On page 1, Irion and Egli cite 6th Cir. Local Rule 45, Fed. R. App. P. 45, Fed. R. Civ. P. 77(c)(2)(D), and 18 U.S.C. § 505 for the proposition that the show cause order needed to be signed by an Article III judge. But those authorities require no such thing.

- On page 1, Irion states "and 'unconstitutional delegation of judicial authority,' U.S. Const. Art.III §1." Irion Show Cause Response at 1 (Nos. 24-5918/5919) (reproduced unmodified). Article III, § 1, of the Constitution does not contain that quote.